# Southern Grocery Co. *v.* Harrison.

## *Assumpsit.*

(Decided November 13, 1913. 63 South. 535.)

*Set Off and Counter Claim; Equitable Set Off.*—A defendant cannot set off, as against an assumpsit action a claim due him under a trust agreement to which plaintiff was a party, as trusts are peculiarly the creatures of equity, and cannot be administered or settled in a court of law even in the equitable action for money had and received.

APPEAL from Marengo Law and Equity Court.

Heard before Hon. EDWARD J. GILDER.

Assumpsit by the Southern Grocery Company against W. C. Harrison. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Amended plea 3 is as follows: "Defendant, as a defense to the action of plaintiff, says that at the time said action was commenced plaintiff was indebted to him in the sum of $1,027.67 for this: On the 28th day of February, 1907, plaintiff and defendant, with others, entered into the following written agreement: 'State of Alabama, Marengo County. This agreement entered into on this 28th day of February, 1907, by and between the Southern Grocery Company, a corporation, Mayer Brothers, a firm composed of M. Mayer, L. Mayer, and H. B. Pake, W. C. Harrison, and Eliasberg Brothers, of the first part, and Rogers Brothers, a firm composed of S. H. Rogers and Enos Rogers, party of the second part, witnesseth: (1) It is understood and agreed that the party of the second part is indebted to the parties of the first part in the amount hereinafter designated, to wit: To Southern Grocery Company in the sum of $5,151.99; to Mayer Brothers, $1,725; to W. C. Harrison,

$1,507.90; and to Eliasberg Brothers $900—and that said amounts were respectively due on the date of this agreement. (2) It is further understood and agreed that W. C. Harrison, party of the first part, undertakes to assist the party of the second part to raise and borrow the sum of $5,000; that the party of the second part agrees and covenants that they will transfer and assign as security to Morris Mayer, as trustee, all collaterals of every kind and description, including rent notes payable to Mrs. Rogers for rent on her place in Marengo county for $450, which said rent note is the property of the party of the second part, having been duly assigned and transferred by Mrs. Rogers to the party of the second part; said collateral to consist of all notes, mortgages and choses in action belonging to or held by the party of the second part. The party of the second part agrees and guarantees that said collaterals will aggregate not less than the sum of $16,000. (3) It is further understood and agreed that from the proceeds of that $5,000 to be borrowed by the party of the second part, with the assistance of said W. C. Harrison, the Watkins Banking Company is to be paid in full of their indebtedness against the party of the second part; that the balance of said sum is to be deposited to the credit of the party of the second part at the First National Bank. (4) It is further understood and agreed that the collaterals are to be held by Morris Mayer until maturity and collected by him; and the proceeds derived from said collaterals shall be applied as follows: The first $5,000 collected is to be used to discharge and pay the said sum of $5,000 borrowed by the said party of the second part; the next $6,000 collected on said collaterals is to be paid to Southern Grocery Company, and Mayer Brothers, pro rata, for advances made to the party of the second part by them respectively for the

year 1907; that the balance collected from said collaterals will be pro rated between the parties of the first part according to the amounts due them respectively until the amounts are fully paid and discharged; the balance, if any, shall be paid over to the party of the second part. (5) The Southern Grocery Company, a corporation, and Mayer Brothers, do agree and understand and covenant that in consideration of the premises, they will advance to the said party of the second part, during the year 1907, in groceries, supplies and merchandise, not to exceed the sum of $6,000 for the purpose of conducting their business at Faunsdale, Ala. (6) It is further understood and agreed that all of said collaterals shall remain in the hands of Morris Mayer until this agreement is fully executed and carried out, subject to the disposition of the parties of the first part. [Signed] Southern Grocery Company, Mayer Brothers, Eliasberg Brothers, W. C. Harrison, Rogers Brothers.' On the 8th day of March, 1907, said Morris Mayer accepted said trust in the following written instrument: 'I, M. Mayer, trustee named in a certain instrument in writing, executed on the 28th day of February, 1907, between Rogers Brothers of the one part and Southern Grocery Company, Mayer Brothers, Eliasberg Brothers, and W. C. Harrison of the other part, do hereby covenant and agree that I will use all necessary diligence in the collection of all collaterals which have been, or may be turned over to me as such trustee by Roger Brothers for the purpose named in said written agreement, and that I will on or before Jan. 1, 1908, proceed to foreclose all unpaid mortgages, pledges, or other securities which may be in my hands as such trustee. Provided, however, that if the said Rogers Brothers shall pay said above named parties the several amounts named in said written agreement at maturity of said respective indebt-

edness on or before Jan. 1, 1908, then in either of such events the undersigned does agree and covenant that he will transfer and assign to Rogers Brothers all such notes, mortgages, pledges or other securities which may have been turned over to him by the said Rogers Brothers. Witness my hand this the 8th day of March, 1907. [Signed] Morris Mayer, Trustee.' And defendant avers that out of and from the collaterals, pledges, and mortgages, and other property of the said Rogers Bros. under said trust agreement pledged to the satisfaction pro rata of the respective indebtedness of said parties of the first part to said agreement, plaintiff has received payment in full of all advances made under said agreement to said Rogers Bros. in the year 1907, and also payment in full of said amount due it at the time of entering into said trust agreement, to wit, $5,151.99. And defendant avers that all the money and funds realized from the sale of said property contained in said agreement was expended in payment of the amount of $5,000 due the bank and $6,000 due plaintiff and Mayer Bros. for advances for 1907, and the payment of said amount of $5,-151.99 to plaintiff, and that said trustee by such payments exhausted the money and funds entirely collected under said agreement, and has paid defendant nothing on his claim, and has no funds with which to pay defendant anything on his claim. And defendant avers that he has received no pro rata on his claim of $1,-507.90 from Rogers Bros., the trustee Morris Mayer, or from the plaintiff under the terms of said agreement. And defendant avers that his pro rata share of said sum of $5,151.99, which was paid to or received by plaintiff from proceeds of said trust property, and to which he is entitled under terms of said trust agreement, is $1,027.-69, and that said amount ex equo et bono belongs to defendant; and defendant hereby offers to set off said

amount of $1,027.69 against plaintiff's demand, and he claims judgment for the excess." The demurrers raise the questions discussed in the opinion.

McDANIEL & WHITFIELD, for appellant. The court erred in overruling plaintiff demurrer to defendant's special pleas 2 and 3. The plea must be treated and tested as a plea of set off and not of recoupment.—*Lawton v. Ricketts*, 104 Ala. 430. Set-off is available only when the subject-matter thereof would support a separate action at law at the commencement of the suit and between the same parties.—*Cox v. Cooper*, 3 Ala. 256; *Goldwaite v. Bank*, 67 Ala. 549; 34 Cyc. 666-670. In the absence of statutory authority, a court of law has no cognizance of a trust or other equitable demand either as a set-off or otherwise.—*Loftin v. Shackelford*, 17 Ala. 455; 34 Cyc. 692; 94 Fed. 610; 19 Wis. 287; *Drennen v. Gilmore Bros.*, 132 Ala. 246.

ELMORE & HERBERT, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—If the facts set up in plea 3, as amended (which the reporter will set out), are true, then a court of law has not the power, even in an action for money had and received, to settle the trust created by the instrument referred to in the plea and thus award the amount to the plaintiff which the plaintiff claims is due him as a cestui que trust under said instrument. Trusts are peculiarly the creatures of equity, and courts of equity are peculiarly the forums which have been created for their administration and settlement. While courts of law, through the equitable action for money had and received, have broadened their jurisdiction and, in very many instances, rendered judg-

[Southern Grocery Co. v. Harrison.]

ments in cases which were also cognizable in courts of equity, they have never in this state undertaken to settle between a trustee and his cestui que trust the conflicting equities which must necessarily exist between them under instruments creating express trusts and under circumstances shown by this plea. The general rule relative to express trusts is that "the cestui que trust has no remedy except by subpœna in chancery."— Perry on Trusts (4th Ed.) § 17.

"In cases of strict trusts the jurisdiction of equity is exclusive. But in cases of quasi trusts, such as bailments, deposits and implied contracts arising from money had and received, a court of law has jurisdiction, and equity will ordinarily not take cognizance of the case."—22 Ency. Pl. Pr. p. 12, subd. "b."

In the instant case Morris Mayer was the trustee of an express trust. The appellee, defendant in the court below, was one of his cestui que trusts, and the only court in this state having jurisdiction of this trust is a court of equity. A court of equity alone has the power to adjust and determine the equities of the parties named in the instrument creating the trust in the fund described in the plea. Plea 3, as amended, therefore set up no defense to the cause of action set out in the complaint, and the trial court erred in overruling the plaintiff's demurrer to the plea. There are other questions presented by the record, but we deem it unnecessary to discuss them.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.